1

2

**CROSNER LEGAL, P.C.**
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

3

4

5

6

7

8

9  *Attorneys for Plaintiffs and the Proposed Class*

10

11  **UNITED STATES DISTRICT COURT**

12  **SOUTHERN DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  CARYN HART and AMANDA GLOVER, on behalf of themselves and all others similarly situated, | Case No.  **'25CV0792 BEN MSB** |
| 16 | **CLASS ACTION COMPLAINT** |
| 17         Plaintiffs, | **JURY TRIAL DEMANDED** |
| 18      v. | |
| 19 | |
| 20  SPROUTS FARMER'S MARKET, INC. | |
| 21 | |
| 22         Defendant. | |

23

24

25

26

27

28

INTRODUCTION

1.      Defendant Sprouts Farmer's Market, Inc. ("Defendant" or "Sprouts") manufactures, distributes, and sells a line of sunflower butter products, including Sprouts Creamy Unsweetened Sunflower Butter, Sprouts Organic Creamy Unsalted & Unsweetened Sunflower Butter, and Sprouts Creamy Sunflower Butter (collectively, the "Products"). Defendant represents that the Products are safe for children and consumers and made with non-toxic ingredients. Specifically, Defendant labels the Products with bright sunflowers and the following statements: "School Friendly" and "Made in small batches with roasted sunflower seeds." The Products' labels further contain a long list of undesired items that the Products boastfully do not contain, including "Non-GMO," "BPA Free," and "Free From" peanuts, tree-nuts, dairy, eggs, fish, sesame, shellfish, wheat, and soy.

2.      Unfortunately, Defendant misleads consumers about the health benefits and quality of the Products and fails to disclose that the Products contain unsafe and unlawful levels of cadmium— a known human carcinogen that is linked to a myriad of health issues. Indeed, the Products' labels do not disclose the presence of cadmium.

3.      Testing revealed that the Sprouts Organic Creamy Unsalted & Unsweetened Sunflower Butter product tested positive for 26.56 micrograms of cadmium per serving and the Sprouts Creamy Sunflower Butter product tested positive for 11.84 micrograms of cadmium per serving. In California, products that test positive for more than 4.1 micrograms of cadmium must display a Proposition 65 warning label. However, Defendant fails to disclose the high levels of cadmium in the Products thereby deceiving consumers.

4.      Defendant also makes protein claims on the front of the Product labels, but fails to include the percent of daily value for protein in the Nutrition Facts Panel ("NFP").

5.      For example, Defendant prominently claims on the front of Product

1

labels that the Products provide a specified amount of protein, such as "8g PROTEIN PER SERVING." Consumers reasonably expect that each Product will actually provide the amount of protein advertised on the Products' front labels in a form the body can use.

6.     The Food and Drug Administration ("FDA") prohibits such front label protein claims unless manufacturers also disclose in the nutrition fact panel how much of the recommended daily value for protein the product will actually provide. *See* 21 C.F.R. §§ 101.9(c)(7)(i), 101.13(b), (n). That is because not all proteins are the same in their ability to meet human nutritional requirements, so a simple statement about the number of grams does not actually inform consumers about how much usable protein they are receiving.

7.     The FDA required method for measuring protein quality is called the "Protein Digestibility Corrected Amino Acid Score"—known by its acronym PDCAAS. It combines a protein source's amino acid profile and its percent digestibility into a discount factor ranging from 0.0 to 1.0 that, when multiplied by the total protein quantity, shows how much protein in a product is actually available to support human nutritional requirements. The regulations term this the "corrected amount of protein per serving." 21 C.F.R. § 101.9(c)(7)(ii). For example, a PDCAAS of .5 means that only half of the protein in that product is actually available to support human protein needs. If the product contained 8 grams total protein per serving, the corrected amount of protein would be only 4 grams per serving.

8.     The FDA prohibits manufacturers from advertising or promoting their products with a protein claim unless they have satisfied two requirements. First, the manufacturer must calculate the "corrected amount of protein per serving" based on the quality of the product's protein using the PDCAAS method. Second, the manufacturer must use the PDCAAS computation to provide "a statement of the corrected amount of protein per serving" in the NFP "expressed

CROSNER LEGAL, P.C.

as" a percent daily value ("%DV") and placed immediately adjacent to the statement of protein quantity. 21 C.F.R. § 101.9(c)(7)(i)-(iii). The %DV is the corrected amount of protein per serving divided by the daily reference value for protein of 50 grams. *Id*. The FDA regulations that govern nutrient content claims are also clear that the manufacturer may not make any front label claims about the amount of protein in the product unless it complies with these two requirements. *See* 21 C.F.R. § 101.13(b) ("A nutrient content claim[] may not be made on the label…unless the claim is made in accordance with this regulation [*i.e.*, § 101.13]…" and (n) ("[n]utrition labeling in accordance with § 101.8…shall be provided for any food for which a nutrient content claim is made"); 58 Fed. Reg. 2302, 23310 (manufacturers can only make a "nutrient content claim…on the label or in labeling of a food, provided that the food bears nutrition labeling that complies with the requirements in proposed § 101.9.").

9.    The primary protein source in Defendant's Products is sunflower seeds. Sunflower seeds are a low quality protein and the PDCAAS score for sunflower seeds is about 0.6, which means the Products nutritionally provide as little as approximately 60% of the protein quantity claimed. Nevertheless, Defendant fails to provide in the NFP a statement of the corrected amount of protein per serving calculated according to the PDCAAS methodology and expressed as a %DV. Accordingly, the protein claims on the front of the Product packages, such as "8g PROTEIN PER SERVING" are unlawful in violation of parallel state and federal laws because Defendant did not comply with the regulatory requirements for making a protein claim. 21 C.F.R. § 101.9(c)(7)(i), 101.13(b), (n). The failure to include a statement of the corrected amount of protein inside the NFP also rendered the NFP itself unlawful. *Id*. § 101.9(c)(7)(i).

10.    Defendant's misrepresentations and omissions caused Plaintiffs and members of the class to pay a price premium for the Products.

11.    Plaintiffs now bring this action seeking redress for Defendant's false

CLASS ACTION COMPLAINT

adverting and deceptive conduct.

### JURISDICTION AND VENUE

12.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the formulation, ingredients, manufacturing, labeling, marketing, and sale of the Products in California, specifically in this district. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiffs. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiffs' claims arise out of those activities, and it reasonable for Defendant to defend this lawsuit because it has sold harmful Products to Plaintiffs and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally expressly aimed conduct at California which caused harm to Plaintiffs and the Class which Defendant knows is likely to be suffered by Californians.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California. Venue is further proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim

occurred in this District because Plaintiff Hart purchased one of the Products within this District. Venue is also proper in this District pursuant to Cal. Civ Code. § 1780(c) because Defendant is doing business in this District.

## PARTIES

15. Defendant Sprouts Farmer's Market, Inc. is Delaware corporation that maintains its principal place of business in Phoenix, AZ. Throughout the Class Period defined herein, Defendant was the manufacturer and distributor of the Products and distributed the Products throughout the United States and California.

16. Plaintiff Hart is a resident of San Diego County, California. Plaintiff Hart purchased the Sprouts Organic Creamy Unsalted & Unsweetened Sunflower Butter product from a Sprouts retail store in Encinitas, California. Plaintiff Hart's most recent purchase was in or around 2023 or 2024.

17. Plaintiff Glover is a resident of Los Angeles County, California. Plaintiff Glover purchased the Sprouts Creamy Sunflower Butter product several times from a Sprouts retail store in Lancaster, California. Plaintiff Glover's most recent purchase was in or around October 2024.

18. Plaintiffs relied on Defendant's deceptive labeling claims as set forth below.

## FACTUAL ALLEGATIONS

### THE LABELS OF THE PRODUCTS LEAD REASONABLE CONSUMERS TO BELIEVE THAT THE PRODUCTS ARE SAFE TO CONSUME AND MADE WITH NON-TOXIC INGREDIENTS

19. Defendant manufactures two sunflower butter products called Sprouts Creamy Sunflower Butter and Sprouts Organic Creamy Unsalted & Unsweetened Sunflower Butter. The labels for each of these products give reasonable consumers the impression that the Products are safe to consume, made with quality ingredients, and do not contain unlawful levels of heavy metals. For example, the labels on each of the Products contain bright sunflowers and represent

5

CROSNER LEGAL. P.C.

CROSNER LEGAL, P.C.

that they are "School Friendly" and "Made in small batches with roasted sunflower seeds." The Products' labels further contain a long list of undesired items that the Products boastfully do not contain, including "Non-GMO," "BPA Free," and "Free From" peanuts, tree-nuts, dairy, eggs, fish, sesame, shellfish, wheat, and soy. Further, the Products' labels do not disclose that they are contaminated with high levels of cadmium. The net-effect or net-impression of the Products' labeling on consumers is that the Products do not contain any potentially harmful ingredients like high levels of cadmium.

20.    The front and rear labels for the Products are shown below:

<u>Sprouts Creamy Sunflower Butter</u>

 

//
//
//

CLASS ACTION COMPLAINT

Sprouts Organic Creamy Unsalted & Unsweetened Sunflower Butter




**TESTING REVEALS THAT THE PRODUCTS CONTAIN HIGH LEVELS OF CADMIUM**

21.    California law provides that 4.1 micrograms per day of cadmium is the maximum allowable daily value of cadmium exposure by oral route pursuant to California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), Cal. Health & Safety Code § 25249.5, *et seq.*[1] A food product that exceeds the 4.1 micrograms maximum allowable daily value of cadmium must be labeled as a known carcinogen.

22.    Sunflower butter products made by Defendant's competitors, such as

---

[1] *See* https://oehha.ca.gov/media/downloads/crnr/cadmium20madl.pdf

CROSNER LEGAL, P.C.

Once Again, contain less than the maximum allowable dose of 4.1 mcg per serving and do not contain high levels of cadmium.[2]

23.    Independent laboratory test results recently revealed high levels of cadmium in Defendant's Creamy Sunflower Butter and Organic Creamy Unsalted & Unsweetened Sunflower Butter products. The test results revealed that the Sprouts Creamy Sunflower Butter product tested positive for 11.84 micrograms of cadmium per serving and the Organic Creamy Unsalted & Unsweetened Sunflower Butter product tested positive for 26.56 micrograms of cadmium per serving:

**SAMPLE ID:**    240416 EXP: APR 2025
Sprouts Creamy Sunflower Butter

**ANALYSIS:**    Quantitative analysis of Lead, Cadmium, Arsenic, and Mercury by Inductively Couple Plasma Mass Spectrometry utilizing EPA 3052 (ICPMS-QNT-EL-HM)

**RESULTS:**

| Element | Result |
|---------|--------|
| As | ND |
| Cd | 0.37 ug/g |
| Pb | 0.004 ug/g |
| Hg | ND |

ND = Not Detected at LOQ of < 0.01 ug/g for As & Cd and < 0.001 ug/g for Hg & Pb

**SAMPLE ID:**    240701 EXP: JUL 2025
Sprouts Organic Unsalted & Unsweetened Creamy Sunflower Butter

**ANALYSIS:**    Quantitative analysis of Lead, Cadmium, Arsenic, and Mercury by Inductively Couple Plasma Mass Spectrometry utilizing EPA 3052 (ICPMS-QNT-EL-HM)

**RESULTS:**

| Element | Result |
|---------|--------|
| As | ND |
| Cd | 0.83 ug/g |
| Pb | 0.004 ug/g |
| Hg | ND |

ND = Not Detected at LOQ of < 0.01 ug/g for As & Cd and < 0.001 ug/g for Hg & Pb

---

[2] https://www.consumerlab.com/reviews/sunflower-seeds-and-butters/sunflower-food/

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

24. Defendant could have, but failed, to take steps to reduce or remove the cadmium in the Products. Defendant also failed to warn consumers that consuming the Products exposes them to unsafe levels of cadmium.

## EXPOSURE TO CADMIUM IS HARMFUL TO HUMAN HEALTH

25. Cadmium is a heavy metal and its presence in food poses a serious safety risk to consumers because it is a cancer-causing agent. "The Department of Health and Human Services (DHHS) has determined that cadmium and cadmium compounds are known human carcinogens."[3] The Centers for Disease Control has recognized "that there is no safe level of exposure to a carcinogen."[4]

26. Infants and young children may be more susceptible to adverse effects of cadmium exposure due to higher intakes of food and drink relative to their bodyweight, and greater potential of metals to affect developing bodies.[5]

27. "[A]ny cadmium exposure should be avoided."[6] According to the Centers for Disease Control and Prevention, exposure to even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease.[7] And, because cadmium builds up in the body, even at low dosage, repeated exposure can cause lung damage and fragile bones. *Id*. Consuming cadmium can also severely irritate the stomach, causing vomiting and diarrhea. *Id*.

28. Research has linked cadmium exposure with kidney dysfunction and

---

[3] https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=47&toxid=15#:~:text=Eating%20food%20or%20drinking%20water,lung%20damage%20and%20fragile%20bones.

[4] https://www.cdc.gov/niosh/cancer/about/niosh-chemical-carcinogen-policy.html?CDC_AAref_Val=https://www.cdc.gov/niosh/topics/cancer/policy.html.

[5] https://www.food-safety.com/articles/8730-study-finds-that-children-aged-25-are-most-highly-exposed-us-population-to-cadmium-in-foods#:~:text=In%20support%20of%20the%20U.S.,disease%20risk%20over%20a%20lifetime.

[6] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/.

[7] https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=47&toxid=15#:~:text=Eating%20food%20or%20drinking%20water,lung%20damage%20and%20fragile%20bones.

CROSNER LEGAL. P.C.

decreases in bone mineral density.[8] Indeed, cadmium "is a toxic heavy metal" that is a "severe health threat" to humans.[9] Cadmium "largely accumulates in kidneys, liver, bone and other organs and causes irreversible damage to the target organs." *Id*.

29.    Because cadmium is a cancer-causing agent, California has placed cadmium on the Proposition 65 list. According to the Proposition 65 website, "[e]xposure to cadmium and cadmium compounds can cause cancer of the lung and may cause cancer of the prostate and kidney."[10] "Cadmium is also on the Proposition 65 list because it can cause birth defects or other reproductive harm. Exposure to cadmium may harm a man's reproductive system. Exposure during pregnancy may affect a child's development." *Id*.

30.    The California Office of Environmental Health Hazard Assessment ("OEHHA") sets an oral cadmium maximum allowable dose level of 4.1 micrograms per day.[11]

31.    The U.S. Agency for Toxic Substances and Disease Registry (ATSDR) has set a chronic oral minimal risk level (MRL) for cadmium of 0.1 micrograms per kilogram of bodyweight per day (μg/kg bw/day).[12] For a 120 lb. adult, the TRV would be approximately 5.4 mcg per day. MRLs indicate a dose

---

[8] Soisungwan Satarug, et al., *Adverse Health Effects of Chronic Exposure to Low-Level Cadmium in Foodstuffs and Cigarette Smoke,* ENVIRONMENTAL MEDICINE VOL. 112, NO. 10, *available at* https://ehp.niehs.nih.gov/doi/full/10.1289/ehp.6751.

[9] Mei Wang, et al., *A review on Cadmium Exposure in the Population and Intervention Strategies Against Cadmium Toxicity,* BULLETIN OF ENVIRONMENTAL CONTAMINATION AND TOXICOLOGY (Jan. 23, 2021), *available at* https://link.springer.com/article/10.1007/s00128-020-03088-1.

[10] https://www.p65warnings.ca.gov/fact-sheets/cadmium-and-cadmium-compounds.

[11] https://oehha.ca.gov/proposition-65/chemicals/cadmium

[12] https://www.food-safety.com/articles/8730-study-finds-that-children-aged-25-are-most-highly-exposed-us-population-to-cadmium-in-foods#:~:text=In%20support%20of%20the%20U.S.,disease%20risk%20over%20a%20lifetime.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

considered safe for humans to consume regularly without increasing disease risk over a lifetime. *Id*.

32.    The U.S. Food and Drug Administration (FDA) developed an oral toxicological reference value (TRV) for characterizing potential health concerns from dietary exposure to cadmium, and to determine if the amount of exposure to the contaminant in food is a potential health concern. The TRV set by the FDA is 0.21–0.36 micrograms (µg) per kilogram of body weight per day.[13] For a 120 lb. adult, the TRV would be approximately 13.5 mcg per day. For a 70 lb. child, the TRV would be approximately 7.9 mcg per day. "In determining this TRV, the FDA conducted extensive research to understand the relationship between dietary cadmium exposure and potential adverse health effects. As a result of this research, the FDA identified health effects on bone and kidneys as the most sensitive health outcome associated with cadmium exposure."[14]

33.    Cadmium oral intake levels of 11.84 and 26.56 micrograms per serving that the Products tested for far exceed recognized U.S. health standards. The cadmium at the levels present in the Products poses an unreasonable safety hazard to consumers and the Products are not healthy to consume.

**DEFENDANT MISREPRESENTS THE PRODUCTS' PROTEIN CONTENT**

34.    The Products' principal display panel further represent that the Products contain a specified number of grams of protein. However, Defendant fails to include a statement of the corrected amount of protein inside the NFP.

35.    The Products' front labels and nutrition facts panel are shown below: //

---

[13] *Reassessment of the cadmium toxicological reference value for use in human health assessments of foods,* NIH, *available at* https://pubmed.ncbi.nlm.nih.gov/37640100/.

[14] *Cadmium in Food and Foodwares*, U.S. Food & Drug Administration, available at https://www.fda.gov/food/environmental-contaminants-food/cadmium-food-and-foodwares.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Sprouts Creamy Sunflower Butter



**Nutrition Facts**
About 14 servings per container

| Serving size | 2 TBSP (32G) |
|---|---|

**Amount per serving**

**Calories** **200**

| | % Daily Value* |
|---|---|
| **Total Fat** 17g | 25% |
| Saturated Fat 2g | 8% |
| Trans Fat 0g | |
| Polyunsaturated Fat 9g | |
| Monounsaturated Fat 6g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 99mg | 4% |
| **Total Carbohydrate** 6g | 2% |
| Dietary Fiber 2g | 8% |
| Total Sugars 3g | |
| Includes 3g Added Sugars | 6% |
| **Protein** 7g | |
| **Iron** 0mg | 8% |
| **Calcium** 0mg | 2% |
| **Potassium** 0mg | 6% |
| **Vitamin D** 0IU | 0% |

\* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

## Sprouts Organic Creamy Unsalted & Unsweetened Sunflower Butter



**Nutrition Facts**
About 14 servings per container

| Serving size | 2 TBSP (32G) |
|---|---|

**Amount per serving**

**Calories** **220**

| | % Daily Value* |
|---|---|
| **Total Fat** 19g | 30% |
| Saturated Fat 2g | 8% |
| Trans Fat 0g | |
| Polyunsaturated Fat 7g | |
| Monounsaturated Fat 10g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 0mg | 0% |
| **Total Carbohydrate** 4g | 1% |
| Dietary Fiber 3g | 10% |
| Total Sugars 1g | |
| Includes 0g Added Sugars | 0% |
| **Protein** 8g | |
| **Iron** 0mg | 10% |
| **Calcium** 0mg | 4% |
| **Potassium** 0mg | 6% |
| **Vitamin D** 0IU | 0% |

\* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

Sprouts Creamy Unsweetened Sunflower Butter



36.    The Products' front label protein claims are unlawful because Defendant did not: (1) calculate the "corrected amount of protein per serving" based on the quality of the product's protein using the PDCAAS method; and (2) provide a statement of that corrected amount of protein per serving in the NFP, expressed as %DV. 21 C.F.R. § 101.9(c)(7)(i) & (iii).

37.    Defendant's failure to provide the required statement of the corrected amount of protein per serving, as well as Defendant's prominent front label protein claims made in the absence of any statement of the corrected amount of protein in the NFP deceived and misled reasonable consumers into believing that a serving of the Products will provide the grams of protein represented on the label, when that is not true. Had Defendant complied with the law, the statement of the corrected amount of protein in the Nutrition Facts Panel would have revealed that the Products provide significantly less protein than advertised because Defendant uses low quality proteins in the Products such as sunflower seeds.

13

CROSNER LEGAL, P.C.

38.     Defendant's misleading and unlawful front label protein claims induced consumers to purchase the Products at a premium price. Had reasonable consumers been informed of the true amount of protein that the Products provided through a statement of the corrected amount of protein per serving, they would not have purchased or would have paid less for the Products.

**THE PRODUCTS' LABELING VIOLATES FEDERAL AND STATE REGULATIONS**

39.     According to FDA regulations, "[a] statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section, calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as a Percent of Daily Value . . . shall be given if a protein claim is made for the product . . ." 21 C.F.R. 101.9(c)(7)(i) (emphasis added). If a manufacturer does not want to perform PDCAAS and provide a statement of the corrected amount of protein per serving in the NFP, then it shall not make any protein claims.

40.     The regulation governing nutrient content claims, section 101.13, also makes this plain. Section 101.13(n) provides that "[n]utrition labeling in accordance with § 101.9 . . . shall be provided for any food for which a nutrient content claim is made" and § 101.13(b) states "a nutrient content claim[] may not be made on the label . . . unless the claim is made in accordance with this regulation [i.e., § 101.13] . . . ." In other words, a manufacturer may not make any protein nutrient content claims on the front labels of their products unless they have complied with the requirements for protein labeling in the nutrition facts panel pursuant to § 101.9(c)(7). Indeed, the FDA made clear when promulgating § 101.13(n) that "a nutrient content claim . . . on the label or in labeling of a food, provided that the food bears nutrition labeling that complies with the requirements in proposed § 101.9." 58 Fed. Reg. 2302, 23310.

41.     Further, FDA regulations require the %DV for protein to be calculated using PDCAAS, a method that accounts for both protein quantity and protein quality. 21 C.F.R. § 101.9(c)(7)(i)-(iii); FDA Food Labeling Guide, p. 29,

14

1   Question N.22.[15] The first step is to calculate the "corrected amount of protein per

2   serving" by multiplying protein quantity by the PDCAAS quality value, and then

3   dividing that "corrected amount" by 50 grams (the "recommended daily value" for

4   protein) to come up with the %DV. *Id.*

5        42.    The Products make protein claims on the front label, but fail to

6   provide a statement of the corrected amount of protein per serving in the NFP

7   calculated according to the PDCAAS method. The protein claims on the front are,

8   therefore, unlawful, and were never permitted to be on the labels in the first

9   instance under §§ 101.9(c)(7)(i), 101.13(n), and 101.13(b).

10       43.    Defendant's failure to include a statement of the corrected amount of

11  protein per serving expressed as a %DV in the NFP also renders the NFP itself

12  unlawful under §§ 101.9(c)(7)(i)-(iii).

13       44.    When promulgating 21 C.F.R. § 101.9(c)(7), the FDA explained in

14  published guidance that "Information on protein quantity alone can be misleading

15  on foods that are of low protein quality." It also explained that it was prohibiting

16  manufacturers from making any protein claims at all unless the manufacturer

17  provides a statement of the corrected amount of protein per serving in the NFP

18  based on PDCAAS because "nutrition labeling must allow consumers to readily

19  identify foods with particularly low quality protein to prevent them from being

20  misled by information on only the amount of protein present." 58 Fed. Reg. 2079

21  at 2101-2.

22       45.    Similarly, 21 C.F.R. § 101.13(i)(3) prohibits manufacturers from

23  making a claim on the front of a product's package about the "amount or

24  percentage of a nutrient," such as protein, if the statement is "false or misleading

25  in any respect." If it is, then "it may not be made on the label." 21 C.F.R. §

26

27

28  ---

[15] Guidance for Industry: A Food Labeling Guide ("FDA Food Labeling Guide") p. 29, Question N22, U.S. Food & Drug Administration, https://www.fda.gov/media/81606/download

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

101.13(b). This is true even if the same amount appears in the nutrition facts panel. 21 C.F.R. § 101.13(c). Since the omission of the %DV from the nutrition facts panel rendered the front label protein claim misleading, the protein claim was not permitted to be on the front label.

46.    The FDA explained in promulgating section 101.13(i) that the regulation was necessary "since many consumers have a limited knowledge and understanding of the amounts of nutrients that are recommended for daily consumption," which means that "a statement declaring that the product contained a specified amount of a nutrient could be misleading. By its very presence, such a statement could give consumers who were unfamiliar with the dietary recommendations the false impression that the product would assist them in maintaining healthy dietary practices relative to the amount of the nutrient consumed when it, in fact, would not." 56 Fed. Reg. 60421. The rules are different for amounts in the NFP and nutrient content claims because a voluntary nutrient declaration on the front panel "is viewed by the agency as an effort to market the food as a significant source of nutrients." 56 Fed. Reg. 60366.

47.    In addition to regulating the NFP, the FDA has promulgated a separate set of regulations that govern nutrient content claims on the front of a package. 21 C.F.R. § 101.13. A nutrient content claim is a claim that "expressly or implicitly characterizes the level of a nutrient." 21 C.F.R. § 101.13(b). "Express" nutrient content claims include any statement outside the Nutrition Facts Panel, about the level of a nutrient. 21 C.F.R. 101.13(b)(1); 21 C.F.R. § 101.13(c). Stating information from the nutrition facts panel (such as grams protein per serving) elsewhere on the package necessarily constitutes a nutrient content claim. 21 C.F.R. § 101.13(c). A manufacturer cannot make a nutrient content claim in the form of a "statement about the amount or percentage of a nutrient" if the statement is "false or misleading in any respect." 21 C.F.R. 101.13(i)(3).

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

48.   Defendant's marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

a.   Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

b.   Section 110705 (a food is misbranded if words, statements and other information required by the Sherman Law to appear food labeling is either missing or not sufficiently conspicuous);

c.   Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

d.   Section 110765, which makes it unlawful for any person to misbrand any food;

e.   Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food;

f.   Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

g.   Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food; and

h.   Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

CROSNER LEGAL, P.C.

**PLAINTIFFS' EXPERIENCE**

49.    Plaintiff Hart purchased the Sprouts Organic Creamy Unsalted & Unsweetened Sunflower Butter product from a Sprouts retail store in San Diego County during the class period. Plaintiff Glover purchased the Sprouts Creamy Sunflower Butter product from a Sprouts retail store in Los Angeles County during the class period.

50.    Plaintiffs were not aware of the high levels of cadmium in the Products at the time of purchase. After reading the label, Plaintiffs purchased the Products on the assumption that the Products did not contain harmful substances like cadmium. Plaintiffs did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' labeling or packaging that disclosed the Products contained high levels of cadmium. At the time of Plaintiffs' purchases, they did not know the Products contained high levels of cadmium.

51.    Plaintiffs also made their purchase after reading and relying on the Products' front label representation that the Products provided 7 or 8 grams of protein per serving. After reviewing the label, Plaintiffs believed that the Products would actually provide the specific amount of protein claimed on the front label in a form human bodies could utilize.

52.    Plaintiffs would not have purchased the Products had they known the Products contain high levels of cadmium, a substance which is known to be hazardous to human health. As a result, Plaintiffs suffered an injury in fact when they spent money to purchase Products they would not have purchased absent Defendant's misconduct.

53.    Moreover, had Defendant not made protein claims on the Products' front labels or adequately disclosed the corrected amount of protein per serving for each Product expressed as a %DV, Plaintiffs would not have purchased the Products or would have, at minimum, paid less for them.

54.    Plaintiffs continue to see the Products for sale at retail stores in

18

CROSNER LEGAL, P.C.

California and desire to purchase the Products again if the Products did not contain high levels of cadmium and did not contain misleading labeling. However, as a result of Defendant's ongoing misrepresentations and material omissions, Plaintiffs are unable to rely on the Products' labeling when deciding in the future whether to purchase the Products.

### REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S OMISSIONS AND REPRESENTATIONS

55.    Consumers, like Plaintiffs, relied on Defendant's labeling statements set forth above, including the statements: "School Friendly," "Made in small batches with roasted sunflower seeds," "Non-GMO," "BPA Free," and "Free From" peanuts, tree-nuts, dairy, eggs, fish, sesame, shellfish, wheat, and soy. The net-effect or net-impression of the Products' labeling on consumers is that the Products do not contain harmful ingredients like high levels of cadmium and certainly do not contain unlawful levels of harmful ingredients.

56.    Consumers, like Plaintiffs, want to know if a product they eat contains substances which are hazardous to their health. Consumers, like Plaintiffs, want to know if a product they eat contains high levels of substances which are declared to be unlawful carcinogens by the State of California. Defendant's nondisclosure of the high levels of cadmium in the Products is material because reasonable consumers would deem the presence of cadmium in the Products to be important in determining whether to purchase the Products. Defendant has exclusive knowledge that the Products contain high levels of cadmium. The fact that Defendant's Products contain cadmium is not reasonably accessible to Plaintiffs and consumers. Consumers, like Plaintiffs, trust that the food products they purchase do not contain toxic heavy metals like cadmium which have been intentionally or negligently added to the products. Consumers, like Plaintiffs, trust that the food products they purchase do not contain toxic heavy metals at unlawful levels. Defendant has a duty to disclose the presence of cadmium in the Products

19

CROSNER LEGAL, P.C.

because the fact is known to Defendant (that the Products contain cadmium), and the failure to disclose the cadmium in the Products is misleading. The high levels of dangerous substances such as cadmium in the Products implicates a health concern that is important to reasonable consumers when deciding to purchase Defendant's Products. Defendant has actively concealed the high levels of cadmium in the Products from Plaintiffs and putative class members.

57.    A failure to disclose a fact constitutes actionable conduct if the omission goes to the central function of the product. Here, the Products' central function is for people to safely consume the Products. Sunflower butter that contains harmful cadmium in extremely high levels does not serve its central function. Reasonable consumers, like Plaintiffs, would deem it important in determining whether to purchase the Products because Plaintiffs would not have purchased the Products had they known that harmful chemicals like cadmium were in the Products. That is, the omission of the cadmium content of the Products was material because a reasonable consumer would deem it important in determining how to act in the transaction at issue.

58.    A failure to disclose a fact constitutes actionable conduct if the omission causes an unreasonable safety hazard. Here, it is not reasonable to sell a product that consumers eat with illegally high levels of cadmium. As explained above, cadmium is a safety hazard because it causes several negative health effects in humans including developmental and reproductive problems and an increased risk of certain cancers.

59.    Defendant also made partial representations that the Products are safe and healthy, including "School Friendly," "Made in small batches with roasted sunflower seeds," "Non-GMO," "BPA Free," and "Free From" peanuts, tree-nuts, dairy, eggs, fish, sesame, shellfish, wheat, and soy, which create the net-impression that the Products did not contain potentially harmful ingredients like cadmium. These partial disclosures are misleading because the cadmium content

20

CROSNER LEGAL, P.C.

1    of the Products was not disclosed.

2        60.    Defendant's front label protein statements are also likely to mislead

3    reasonable consumers. Consumers reasonably expect that Defendant's products

4    will actually provide nutritionally the full amount of protein per serving claimed

5    on the front of the package. But Defendant's products do not do so and instead

6    contain low protein quality proteins. Had Defendant included a statement of the

7    corrected amount of protein per serving in the NFP as it was required to do under

8    the law, it would have revealed that the Products contain low quality proteins and

9    provide nutritionally as little as 60% of their protein quantity. That information

10   was material to consumers.

11       61.    Reasonable consumers are also unaware of the nutritional value of

12   various protein sources and upon seeing a front-label quantitative protein claim

13   reasonably believe that all of the advertised protein will be nutritionally

14   available—i.e., that the product contains high quality proteins. Had Defendant

15   complied with the law, the statement of the corrected amount of protein expressed

16   as a %DV would have revealed that the Products provide significantly less of the

17   daily value of protein than high quality protein products with comparable protein

18   quantities.

19       62.    Consumers lack the meaningful ability to test or independently

20   ascertain the truthfulness of Defendant's food labeling claims, especially at the

21   point of sale. Reasonable consumers, when they look at the front label of the

22   Products, believe that the Products provide the amount of protein represented on

23   the front label. Because Defendant does not include legally required information

24   as to the quality of the protein in the Nutrition Facts Panel via the statement of

25   corrected amount of protein expressed as a %DV, consumers do not have any

26   reason to think otherwise. An average consumer does not have the specialized

27   knowledge necessary to ascertain that a serving of a Product does not provide the

28   number of grams of protein that is represented on the label. An average consumer

21

also lacks the specialized knowledge necessary to determine the PDCAAS for the Products. The average reasonable consumer had no reason to suspect that Defendant's representations on the packages were misleading. Therefore, consumers had no reason to investigate whether the Products actually do provide the amount of protein per serving that the labels claim they do and reasonably relied on Defendant's representations regarding the nature of the Products.

**PLAINTIFFS AND THE PUTATIVE CLASS MEMBERS SUFFERED ECONOMIC INJURY**

63.    Plaintiffs and putative class members suffered economic injury as a result of Defendant's actions. Plaintiffs and putative class members spent money that, absent Defendant's actions, they would not have spent. With all the other sunflower butter products on the market without high levels of cadmium, a reasonable consumer would choose to purchase a product without high levels of cadmium, and with accurately labeled protein products, instead of Defendant's Products. Plaintiffs and putative class members are entitled to damages and restitution for the purchase price of the Products that were defective, not merchantable, and not fit for their represented purpose. Consumers, including Plaintiffs, would not have purchased Defendant's Products if they had known the Products contain high levels of cadmium and low-quality proteins. Defendant did not disclose that the Products contain high levels of cadmium and low quality although it was required to do so.

64.    Making matters worse, sunflower butter products made by Defendant's competitors, such as Once Again, do not contain high levels of cadmium. Thus, there are safer alternatives that Plaintiffs and class members would have purchased but were denied the benefit-of-the bargain as a result of Defendant's concealment of the high levels of cadmium in the Products. Because high levels of cadmium is a hazard to human health, Defendant has a continuing duty to disclose the presence of high levels of cadmium in the Products to consumers. Defendant has failed to adequately disclose that the Products contain

22

CROSNER LEGAL. P.C.

high levels of cadmium. Defendant's Products contain a hidden defect and Plaintiffs and putative class members suffered economic injury. Had Plaintiffs and putative class members known about the high levels of cadmium, they would not have purchased the Products or would have paid less for the Products.

65.    Plaintiffs and the putative class have also suffered economic injury as a result of Defendant's unlawful protein content representations.

## NO ADEQUATE REMEDY AT LAW

66.    Plaintiffs and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

67.    Legal remedies require more "stringent" proof, and are therefore harder to obtain, are not "equally prompt and certain."

68.    Plaintiffs are pleading the UCL claim in the alternative and assert entitlement to equitable relief to recover the amounts paid for the Product to the extent those amounts (in whole or in part) are deemed not recoverable as damages for Plaintiffs' legal claims.

69.    Plaintiffs lack an adequate remedy at law if the amount of damages is less than the price paid for the goods and restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies.

70.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar

CROSNER LEGAL, P.C.

23

representations and omissions made on the type of products at issue). This is especially important here because Plaintiffs allege Defendant has committed "unlawful" acts and brings a claim for violation of the UCL's "unlawful prong." Specifically, Defendant has violated California's Safe Drinking Water and Toxic Enforcement Act of 1986, Cal. Health & Safety Code § 25249.5*, et seq.* No other causes of action allow this claim to proceed, and thus, there is no adequate remedy at law for this specific violation of the UCL's unlawful prong. Plaintiffs' UCL unlawful prong claim does not rest on the same conduct as their other causes of action, and there is no adequate remedy at law for this specific unlawful claim. Plaintiffs and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

71. Injunctive relief is appropriate on behalf of Plaintiffs and members of the class because Defendant continues to omit material facts about the Products. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products contain high levels of cadmium; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases,

1    is also not available through a legal remedy (such as monetary damages). In

2    addition, Plaintiffs are currently unable to accurately quantify the damages caused

3    by Defendant's future harm, because discovery and Plaintiffs' investigation has

4    not yet completed, rendering injunctive relief necessary. Further, a public

5    injunction is available under the UCL, and damages will not adequately benefit

6    the general public in a manner equivalent to an injunction.

7          72.    It is premature to determine whether an adequate remedy at law

8    exists. This is an initial pleading and discovery has not yet commenced and/or is

9    at its initial stages. No class has been certified yet. No expert discovery has

10    commenced and/or completed. The completion of fact/non-expert and expert

11    discovery, as well as the certification of this case as a class action, are necessary

12    to finalize and determine the adequacy and availability of all remedies, including

13    legal and equitable, for Plaintiffs' individual claims and any certified class or

14    subclass. Plaintiffs therefore reserve their right to amend this complaint and/or

15    assert additional facts that demonstrate this Court's jurisdiction to order equitable

16    remedies where no adequate legal remedies are available for either Plaintiffs

17    and/or any certified class or subclass. Such proof, to the extent necessary, will be

18    presented prior to the trial of any equitable claims for relief and/or the entry of an

19    order granting equitable relief.

20                           **CLASS ACTION ALLEGATIONS**

21          73.    Plaintiffs bring this action as a class action pursuant to Federal Rules

22    of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Classes:

23

24       **Nationwide Class:** All U.S. citizens who purchased the Products in
their respective state of citizenship for personal and household use and

25       not for resale within the applicable statute of limitations and until the
date class notice is disseminated.

26

27       **California Class:** All California citizens who purchased the Products
in California for personal and household use and not for resale within

28       the applicable statute of limitations and until the date class notice is

CROSNER LEGAL, P.C.

disseminated.

74.    Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

75.    Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

76.    The Class is appropriate for certification because Plaintiffs can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

77.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

78.    <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

CROSNER LEGAL. P.C.

26

c.      Whether Defendant made material omissions concerning the Products that were likely to deceive the public;

d.      Whether Plaintiffs and the Class are entitled to injunctive relief;

e.      Whether Plaintiffs and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

79.    Typicality: Plaintiffs are a member of the Class that Plaintiffs seek to represent. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

80.    Adequacy: Plaintiffs are adequate Class representatives because Plaintiffs' interests do not conflict with the interests of the Class Members Plaintiffs seek to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiffs have a strong interest in vindicating the rights of the class; Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend to vigorously prosecute this action. Plaintiffs have no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiffs and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

81.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.      The joinder of hundreds of individual Class Members is

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

82.  Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

83.  Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require

28

Defendant to provide full restitution to Plaintiffs and Class members.

84.    Unless the Class is certified, Defendant will retain monies that were taken from Plaintiffs and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

**FIRST CLAIM FOR RELIEF**

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code § 1750 *et seq.***

85.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

86.    Plaintiffs bring this claim under the CLRA individually and on behalf of the California Class against Defendant.

87.    At all times relevant hereto, Plaintiffs and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

88.    At all relevant times, Defendant constituted a "person," as defined in California Civil Code section 1761(c).

89.    At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

90.    The purchases of the Products by Plaintiffs and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

91.    Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that they do not contain hazardous substances such as high levels of cadmium. Defendant fails to disclose that the Products contain high levels of cadmium. This is a material omission as reasonable consumer would find the fact that the Products

29

1    contain high levels of cadmium to be important to their decision in purchasing the

2    Products.

3       92.    Defendant also disseminated, or caused to be disseminated, through

4    its advertising, false and misleading representations, including the Products'

5    labeling that the Products provide nutritionally more protein than they actually do.

6       93.    Defendant's representations violate the CLRA in the following

7    ways:

8       a)    Defendant represented that the Products have characteristics,

9    ingredients, uses, and benefits which they do not have (Cal. Civ. Code §

10   1770(a)(5));

11      b)    Defendant represented that the Products are of a particular standard,

12   quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

13      c)    Defendant advertised the Products with an intent not to sell them as

14   advertised (Cal. Civ. Code § 1770(a)(9)); and

15      d)    Defendant represented that the subject of a transaction has been

16   supplied in accordance with a previous representation when it has not (Cal. Civ.

17   Code § 1770(a)(16)).

18      94.    Defendant's actions as described herein were done with conscious

19   disregard of Plaintiffs and the Class members' rights and were wanton and

20   malicious.

21      95.    Defendant's wrongful business practices constituted, and constitute,

22   a continuing course of conduct in violation of the CLRA, since Defendant is still

23   representing that the Products have characteristics which they do not have.

24      96.    Pursuant to California Civil Code section 1782(d), Plaintiffs and the

25   California Class seek an order enjoining Defendant from engaging in the methods,

26   acts, and practices alleged herein.

27      97.    Pursuant to California Civil Code section 1782, Plaintiffs notified

28   Defendant in writing by certified mail of the alleged violations of the CLRA and

30

demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

98.    More than thirty days have passed since Plaintiffs sent Defendant a CLRA letter, and Defendant has failed to take the corrective action described therein. Wherefore, Plaintiffs seek actual, punitive, and statutory damages as appropriate, as well as attorneys' fees and costs for Defendant's violations of the CLRA.

## SECOND CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law

### Cal. Bus. & Prof. Code § 17200 *et seq.*

99.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

100.    Plaintiffs bring this claim under the UCL individually and on behalf of the California Class against Defendant.

101.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

## Unlawful

102.    Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and violating California Civil Code sections 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16), California Business & Professions Code section 17500 *et seq.*, California common law breach of implied warranties, and California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), Cal. Health & Safety Code § 25249.5*, et seq.*; the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; the misbranded food provisions of the Sherman Law (Article 6), including without limitation,

CROSNER LEGAL, P.C.

California Health & Safety Code §§ 110660, 110665, 110705, 110760, 110765, and 110770; and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), *et seq*. and FDA regulations, including but not limited to 21 C.F.R. § 101.9 (c)(7), which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

103.    Plaintiffs, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

### Unfair

104.    Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiffs and the members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiffs and the other Class members paid for Products that were not as advertised by Defendant. Further, Defendant failed to disclose material facts (that the Products contain high levels of cadmium and do not nutritionally contain the advertised amount of protein per serving) of which it had exclusive knowledge. While Plaintiffs and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. For example, Defendant's competitors sell sunflower butter products that do not contain high levels of cadmium and do not make front label protein representations without providing a statement of the corrected amount of protein per serving in the NFP.

CLASS ACTION COMPLAINT

CROSNER LEGAL. P.C.

**Fraudulent**

105.  Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products do not contain high levels of cadmium.

106.  Plaintiffs and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiffs and the other members of the Class, each of whom purchased Defendant's Products. Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

107.  Defendant's wrongful business practices and violations of the UCL are ongoing.

108.  Plaintiffs and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the Class seek interest in an amount according to proof.

109.  Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiffs and the California Class seek (1) restitution from Defendant of all money obtained from Plaintiffs and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

**THIRD CLAIM FOR RELIEF**

**Breach of Implied Warranties**

110.   Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

111.   Plaintiffs bring this claim individually and on behalf of the Classes against Defendant.

112.   Defendant was at all relevant times the manufacturer, distributor, and/or warrantor of the Products. Defendant knew or had reason to know of the specific use for which its Products were purchased.

113.   Defendant, through the acts and omissions set forth herein, in the sale, marketing, and promotion of the Products made implied representations to Plaintiffs and the Class that the Products were fit for the particular purpose of consumption. However, the Products are hazardous to consume. Further, Defendant cannot legally sell the products in California without a Proposition 65 disclosure on the labels, and thus, by definition they are not fit for the particular purpose of consumption. At the time the Products were sold, Defendant knew or should have known that Plaintiffs and members of the Class would rely on Defendant's skill and judgment regarding the safety and composition of the Products. Because the Products contain high levels of cadmium, they are not of the same quality as those generally accepted in the trade and were not fit for the ordinary purposes for which the Products are used (i.e., consumption).

114.   By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Product's packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiffs and members of the Class and Defendant.

CROSNER LEGAL, P.C.

34

Defendant's labeling and advertising, combined with the implied warranty of merchantability, constitute a warranty that the Products do not contain hazardous substances such as high levels of cadmium.

115.   In reliance on Defendant's skill and judgment and the implied warranties of fitness for this purpose and merchantability, Plaintiffs and members of the Class purchased the Products for use to consume. Defendant knew that the Products would be purchased and used without further testing by Plaintiffs and Class members.

116.   Consumers are the intended beneficiaries of the implied warranty as they are the ones Defendant made the Products for and specifically marketed the Products to consumers. Defendant breached the implied warranty of merchantability. Because the Products contain high levels of cadmium, they are not fit for ordinary use (i.e., consumption).

117.   As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for the loss of that money, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

118.   Plaintiffs seek punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiffs and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with

the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Defendant's misconduct is oppressive. Reasonable consumers would look down upon it and/or otherwise would despise such misconduct. This misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## FOURTH CLAIM FOR RELIEF

### Violations of False Advertising Law

### Bus. & Prof. Code § 17500, *et seq.*

119. Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

120. Plaintiffs bring this claim individually and on behalf of the California class against Defendant.

121. Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

122. Defendant made representations and statements (by omission and commission) that lead reasonable consumers to believe that the Products did not contain high levels of cadmium. Defendant had a duty to disclose that the Products contained a substance harmful to human health in violation of Proposition 65.

123. Further, Defendant made representations and statements, by omission and commission, that lead reasonable consumers to believe that the Products

CROSNER LEGAL, P.C.

contained a higher amount of protein per serving than they actually do. Defendant had a duty to disclose the corrected amount of protein per serving in the Products' nutrition facts panel, as calculated by the PDCAAS method, but failed to do so.

124.   Plaintiffs and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing Defendant's Products or paying less for them.

125.   Defendant's omissions are likely to deceive the general public.

126.   Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions code.

127.   As a direct and proximate result of Defendant's false advertising, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for the loss of that money, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

128.   Plaintiffs seek punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiffs and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious,

37

oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Defendant's misconduct is oppressive. Reasonable consumers would look down upon it and/or otherwise would despise such misconduct. This misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## FIFTH CLAIM FOR RELIEF

### Intentional Misrepresentation/Fraud

129.  Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

130.  Plaintiffs bring this claim individually and on behalf of the Classes against Defendant.

131.  Defendant has fraudulently and deceptively misrepresented to Plaintiffs and class members that the Products are safe for human consumption by failing to disclose that the Products contain high levels of cadmium.

132.  Further, Defendant has deceptively misrepresented that the Products contain more protein per serving than they actually do.  Defendant failed to provide the corrected protein amount, represented by the percent daily value, as required by law.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

133.   These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendant, not reasonably known to Plaintiffs, and material at the time they were made. Defendant knew or should have known the composition of the Products, including cadmium and protein content.

134.   These misrepresentations were material as consumers consider cadmium content and protein content important when making the decision to purchase the Products.

135.   By and through such fraud, deceit, misrepresentations and/or omissions Defendant intends to induce Plaintiffs and those similarly situated to purchase the Products.

136.   As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiffs and Class members suffered damages, including, without limitation, the amount they paid for the Product.

137.   Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to consumers, including Plaintiffs and Class members.

### SIXTH CLAIM FOR RELIEF

### Unjust Enrichment

138.   Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

139.   Plaintiffs bring this claim individually and on behalf of the Classes against Defendant.

140.   By failing to disclose that the Products contain high levels of cadmium, and by misrepresenting the amount of protein per serving in the Products, Defendant was unjustly enriched at the expense of Plaintiffs and class members. It would be inequitable, unjust, and unconscionable for Defendant to retain these ill-gotten gains.

141.  Plaintiffs seek an order requiring Defendant to pay restitution to Plaintiffs and class members.

## REQUEST FOR RELIEF

142.  Plaintiffs, individually and on behalf of all others similarly situated, requests for relief pursuant to each claim set forth in this complaint, as follows:

a.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as the Class Representatives and appointing the undersigned counsel as Class Counsel;

b.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.      Ordering damages for Plaintiffs and the Class;

e.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

f.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: April 2, 2025                    CROSNER LEGAL, P.C.

By:      */s/  Lilach H. Klein*
_____
LILACH H. KLEIN

9440 Santa Monica Blvd. Suite 301

40



Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
lilach@crosnerlegal.com

*Attorneys for Plaintiffs and the Proposed Class*

CROSNER LEGAL. P.C.

41

1

## **Venue Affidavit**

2    I, Lilach Klein, declare as follows:

3    1.    I am an attorney duly licensed to practice before all of the courts of
4    the State of California. I am one of the counsel of record for Plaintiffs.

5    2.    This declaration is made pursuant to § 1780(d) of the California
6    Consumers Legal Remedies Act.

7    3.    Defendant has done, and is doing business in California, including in
8    this District. Such business includes the marketing, promotion, distribution, and
9    sale of the Products.

10    4.    Plaintiff Hart purchased one of the products at issue in this District.

11

12    I declare under penalty of perjury under the laws of the State of California
13    and the United States that the foregoing is true and correct.

14

15    Executed on April 2, 2025 in Sacramento, California.

16

17                                    CROSNER LEGAL, P.C.

18

19                                    By:      /s/  Lilach H. Klein
20                                                LILACH H. KLEIN

21                                    9440 Santa Monica Blvd. Suite 301
22                                    Beverly Hills, CA 90210
                                      Tel: (866) 276-7637
23                                    Fax: (310) 510-6429
24                                    lilach@crosnerlegal.com

25                                    *Attorney for Plaintiffs and the Proposed*
26                                    *Class*

27

28